UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

REYNOLD B. SILAS,

                           Plaintiff,

          v.

THE CITY OF NEW YORK, NEW YORK CITY
POLICE DEPARTMENT, DETECTIVE JOHN
DOE, THE CITY OF YONKERS, THE CITY OF
YONKERS POLICE DEPARTMENT,
DETECTIVE CAVE, *Individually and in his
Official Capacity*, THE HOME DEPOT, INC. d/b/a
HOME DEPOT, and HOME DEPOT U.S.A., INC.
d/b/a HOME DEPOT,

                           Defendants.

**MEMORANDUM & ORDER**
18-CV-07122 (HG) (RML)

**HECTOR GONZALEZ**, United States District Judge:

## Table of Contents

FACTUAL BACKGROUND ........................................................................................................ 2
PROCEDURAL HISTORY ......................................................................................................... 7
DISCUSSION .............................................................................................................................. 9
   I.   Plaintiff's Section 1983 Claims Fail ................................................................................ 9
        A.   Plaintiff's Section 1983 Claims against the Home Depot Defendants Fail ............ 10
        B.   Plaintiff's Section 1983 Claims Against the Yonkers Defendants Fail ................. 11
             i.     Municipal Liability .......................................................................................... 11
             ii.    False Arrest and False Imprisonment ............................................................... 12
             iii.   Malicious Prosecution ...................................................................................... 14
             iv.    Excessive Force and Police Brutality ............................................................... 16
             v.     Negligent and Excessive Detention .................................................................. 17
             vi.    Abuse of Process .............................................................................................. 17
             vii.   Invasion of Privacy .......................................................................................... 18
             viii.  Libel and Slander, Negligence, Negligent and Intentional Infliction of
                    Emotional Distress, Negligent Hiring and Retention, Menacing and
                    Harassment, and Reckless Disregard ................................................................ 19
   II.  Plaintiff's Section 1985 Claims Fail .............................................................................. 20
   III. Plaintiff's Section 1981 Claim Fails .............................................................................. 21
   IV.  The Court Declines to Exercise Supplemental Jurisdiction Over Plaintiff's New York
        Common Law Claims ..................................................................................................... 23
CONCLUSION .......................................................................................................................... 23

*Pro se* Plaintiff Reynold B. Silas[1] filed this action against Defendants the City of Yonkers, the City of Yonkers Police Department (the "YPD"), YPD Detective William Cave, Jr. (together, the "Yonkers Defendants") as well as Home Depot Inc., and Home Depot U.S.A., Inc. (together, the "Home Depot Defendants") (collectively, "Defendants") alleging several causes of action, including, among other things, negligent and excessive detention, negligent and intentional infliction of emotional distress, excessive force, and municipal liability, in violation of Plaintiff's constitutional rights and civil rights under the Constitution of New York, the Constitution of the United States, as well as 42 U.S.C. §§ 1981, 1983, 1985 and 28 U.S.C. § 1343.  ECF No. 1-1 at 6–7 (Complaint).[2]

Presently before the Court are the separate motions for summary judgment of the Yonkers Defendants and the Home Depot Defendants.  ECF Nos. 55, 58.  For the reasons set forth below, the Court grants Defendants' motions for summary judgment.

## FACTUAL BACKGROUND[3]

On December 23, 2015, Plaintiff went to the Home Depot store located at 601 Sprain Road, Yonkers, New York.  ECF No. 58-2 ¶ 1 (Home Depot Defendants' Rule 56.1 Statement of

---

[1]   Plaintiff was represented by counsel at the time he initiated the action on November 2, 2018.  *See* ECF No. 1-1 at 17 (Signature Page of Complaint).  Plaintiff's former counsel filed a motion to withdraw on April 22, 2022.  ECF No. 50.  After providing Plaintiff with an opportunity to object to the withdrawal, on June 9, 2022, the Court granted counsel's motion to withdraw.  Following the Court's orders directing Plaintiff to clarify whether he intended to obtain new counsel, on August 11, 2023, Plaintiff filed a letter informing the Court that he intended to proceed *pro se*.  ECF No. 53.

[2]   Defendants the City of New York, the New York City Police Department and Detective John Doe were terminated from the action on June 27, 2019, by joint stipulation.  ECF No. 19 (Stipulation and Order of Dismissal).

[3]   Plaintiff did not submit a counterstatement to Defendants' 56.1 statements of fact.  The Court will treat the facts asserted in Defendants' 56.1 statements as undisputed to the extent they

2

Undisputed Material Facts).  Plaintiff contends he was at the store "to get a price on . . .

materials" because he was "supposed to do a [job] close to that area."  ECF No. 58-3 at 6

(Plaintiff Deposition Transcript).  Defendants contend Plaintiff "fraudulently opened a credit line

in the name of non-party Michael Hazan[] . . . without his consent and used the same to purchase

$8,932.54 worth of flooring."  ECF No. 58-2 ¶ 2.  A Home Depot customer order specialist,

Ronya Ahmed, and her colleague helped Plaintiff open the Home Depot credit line and verified

the credit card and ID used in the transaction.  ECF No. 55-5 at 12–13 (Ahmed Deposition

Transcript).  Ms. Ahmed recalled that the name on the ID was "Michael."  *Id.*

As Home Depot employees were gathering the flooring Plaintiff purchased and putting

together the order, but while Plaintiff was still in the store, Mr. Hazan received an email

notification of the purchase.  ECF No. 58-2 ¶ 3; ECF No. 58-10 at 2 (Email from Home Depot to

Mr. Hazan dated December 23, 2015).  Mr. Hazan immediately called Home Depot to alert them

of the fraudulent purchase, and spoke with Ms. Ahmed.  ECF No. 58-2 ¶ 4; ECF No. 55-5 at 5

(Ahmed Deposition Transcript) ("[I]n the middle of [the purchase] a customer called the store. . .

. [T]he customer we were ringing up was the same customer on the phone complaining to me,

---

are supported by record evidence, and Plaintiff's submissions do not contradict them.  *See
Brandever v. Port Imperial Ferry Corp.*, No. 13-cv-2813, 2014 WL 1053774, at *3 (S.D.N.Y.
Mar. 13, 2014) ("The law is clear that a nonmoving party's failure to respond to a Rule 56.1
statement permits the court to conclude that the facts asserted in the statement are uncontested
and admissible.  A *pro se* litigant is not excused from this rule.").  Here, the Court ordered
Defendants to file their motions for summary judgment with statements notifying Plaintiff of the
potential consequences of failure to respond, as required by Local Civil Rule 56.2.  *See* Text
Order dated November 2, 2022; *see also* ECF No. 62 (Yonkers Defendants' Certificate of
Service); ECF No. 64 (Home Depot Defendants' Local Civil Rule 56.2 Notice and Certificate of
Service ).  Despite this notice,  Plaintiff failed to submit responses to Defendants' 56.1
statements.  Accordingly, the Court may consider the facts in Defendants' 56.1 statements as
uncontested and admissible.  *See Berry v. Marchinkowski*, 137 F. Supp. 3d 495, 502 n.1.
(S.D.N.Y. 2015).

yelling to me, saying he's never been to Yonkers and why did someone open up a credit card of $9,000."). Ms. Ahmed then "went to the other side [of the Home Depot store], [] called her manager" and "went around the corner to make sure that the flooring didn't leave the store." ECF No. 55-5 at 14 (Ahmed Deposition Transcript). Because the customer who made the fraudulent transaction was still in the store, a Home Depot security guard decided to call the YPD. ECF No. 56 ¶ 1 (Yonkers Defendants' Rule 56.1 Statement of Undisputed Facts); ECF No. 58-2 ¶ 5; ECF No. 58-5 at 5 (Hazan Deposition Transcript) ("Q. And eventually . . . the decision was made during that . . . call  . . . because the person who had used your name to purchase materials in Home Depot that day, was still shopping in the store to call the police; is that correct?  A. That's right, yes.").

The Home Depot security guard told the YPD dispatcher that the customer who completed the fraudulent transaction "was a black male with hair braids, who was wearing a green sweatshirt, jeans and a black hat." ECF No. 56 ¶ 4. When the YPD officers arrived at the store they observed a black male wearing a green sweatshirt—later identified as Plaintiff—by the door and asked the security guard to confirm whether he was the individual who had completed the fraudulent transaction. *Id.* ¶ 9; ECF No. 58-2 ¶ 6. After the security guard confirmed Plaintiff's identity, one of the YPD officers approached Plaintiff and observed him throw paperwork to the ground. ECF No. 56 ¶¶ 10–11; ECF No. 58-2 ¶ 7. The officer "recovered the paperwork that Plaintiff threw to the ground, observed the paperwork to be a temporary credit account in the name of Mr. Hazan . . . and [placed Plaintiff in custody] without incident." ECF No. 56 ¶ 12; ECF No. 58-2 ¶ 8. The officers also spoke with Ms. Ahmed, who identified Plaintiff as the credit applicant. ECF No. 56 ¶ 13.

The officers transported Plaintiff to the YPD Detective Division. *Id.* ¶ 15–19. There, Detective Cave and his colleague attempted to speak to Plaintiff, but terminated the interview when he requested an attorney. *Id.* ¶ 20. Ms. Ahmed was unable to go to the YPD Detective Division that day to give a written statement. *Id.* ¶ 23. Without a statement from her or the victim's statement, Detective Cave released Plaintiff, but continued the investigation. *Id.* ¶ 24.

On December 25, 2015, two days after the incident, Mr. Hazan went to the YPD Detective Division to provide a statement and stated that he had never been to the Home Depot in Yonkers and did "not open and/or authorize anyone to open/use a Home Depot credit account in his name." *Id.* ¶¶ 25–28, 32–33; ECF No. 58-2 ¶ 11. Mr. Hazan further stated that he did not know Plaintiff and wished to file formal charges against him. ECF No. 56 ¶¶ 30–31.

On February 8, 2016, Detective Cave met with Ms. Ahmed, and she positively identified Plaintiff in a photographic array as "the male she assisted with opening a Home Depot credit account on December 23, 2015." *Id.* ¶¶ 36–37. Detective Cave also showed Ms. Ahmed the credit card account paperwork recovered on the scene, and Ms. Ahmed "confirmed that the paperwork was, in fact, the paperwork she provided to Plaintiff when Plaintiff opened a credit account in Mr. Hazan's name and purchased . . . [the] flooring material on December 23, 2015." *Id.* ¶ 38; ECF No. 58-2 ¶ 15.

On March 31, 2016, Detective Cave presented his investigation to Assistant District Attorney ("ADA") Jonathan Strongin, who authorized Plaintiff's arrest on one count of identity theft in the first degree in violation of Penal Law § 190.80(2). ECF No. 56 ¶¶ 40, 43–44; ECF No. 58-2 ¶ 16. On April 15, 2016, Detective Cave and ADA Darcy Rydlun called Plaintiff, informed him that formal charges were being filed, and asked that he surrender himself. ECF No. 56 ¶ 41–42; ECF No. 58-2 ¶ 17. Plaintiff responded that he would surrender the following

week, but failed to do so.  *Id.*  On April 29, 2016, upon the application of Detective Cave and the

Westchester County District Attorney's Office, a judge of the City of Yonkers Court issued a

felony arrest warrant for Plaintiff.  ECF No. 56 ¶¶ 42–44.

On July 18, 2017, approximately 18 months after the incident at Home Depot, New York

Police Department ("NYPD") officers pulled Plaintiff over for a traffic infraction.  ECF No. 56 ¶

45; ECF No. 58-2 ¶ 18.  During the course of the traffic stop, officers determined that there was

an outstanding warrant for Plaintiff and placed him under arrest.  ECF No. 56 ¶¶ 46–47; ECF

No. 58-2 ¶ 18.  Two days later, the YPD executed the arrest warrant and transferred Plaintiff to

YPD Central Booking.  ECF No. 56 ¶¶ 48–49; ECF No. 58-2 ¶ 19.  Thereafter, Plaintiff was

taken to the Westchester County Detention Center where he remained for two weeks until he

posted bail.  ECF No. 56 ¶ 52; ECF No. 58-2 ¶ 20.[4]

On August 7, 2017, "in lieu of conducting a felony hearing for the charge of identity theft

in the first degree against Plaintiff, the Westchester County District Attorney's Office charged

Plaintiff [in] a superseding misdemeanor information" with one count of identity theft in the

third degree, in violation of Penal Law § 190.78(1), and one count of attempted grand larceny in

the fourth degree, in violation of Penal Law § 155.30(1).  ECF No. 56 ¶ 53.

---

[4]      While in custody at the Westchester County Detention Center, "Plaintiff was placed on a
'MEDICAL KEEP LOCK' by a licensed practical nurse from July 23, 2017, through July 27,
2017," because he was allegedly incorrectly diagnosed with tuberculosis.  ECF No. 56 ¶ 51; *see
also* ECF No. 55-13 at 4 (Westchester County Dept. of Correction Inmate Admission Form)
("Due to an increased risk for Tuberculosis . . . the Department of Correction has established a
testing program for this disease.").

On February 8, 2018, the day Plaintiff's criminal case was scheduled for trial, the DA's Office withdrew the charges because the witnesses needed for trial were not available.  ECF No. 56 ¶¶ 54–55; ECF No. 58-2 ¶ 21.[5]

## PROCEDURAL HISTORY

On November 2, 2018, Plaintiff filed a complaint against Defendants in the Supreme Court of the State of New York, County of Kings.  ECF No. 1-1 at 7.  On December 14, 2018, the Home Depot Defendants removed the action to this District with the consent of the Yonkers Defendants.  ECF No. 1.

On September 29, 2022, the Yonkers Defendants and the Home Depot Defendants each filed motions for summary judgment.  ECF Nos. 55, 58.  On October 28, 2022, Plaintiff filed his opposition to the Yonkers Defendants' motion.  ECF No. 61.  On November 2, 2022, the Court ordered Defendants to serve their motions for summary judgment on Plaintiff with the "Notice to Pro Se Litigant Who Opposes Summary Judgment" required by Local Civil Rule 56.2 and provided Plaintiff with additional time to file supplemental responses.[6]  On December 12, 2022, Plaintiff filed his opposition to the Home Depot Defendants' motion.  ECF No. 66.  On

---

[5]    While Plaintiff contends that he was "found not guilty," he does not introduce any evidence to that effect or oppose Defendants' 56.1 Statements of Material Facts.  ECF No. 61 at 1; *see also* ECF No. 55-16 at 3–4 (City Court of Yonkers Hearing Transcript dated February 5, 2018) ("Judge, People are not going to be able to go forward with this trial.  Some of our necessary witnesses from the Yonkers Home Depot store are no longer available . . . .  [S]o at this time we make a motion to dismiss. . . .  THE COURT: Okay.  The matter is marked withdrawn.").

[6]    Defendants served their Local Civil Rule 56.2 notices on Plaintiff on November 3, 2022, and November 7, 2022.  *See* ECF No. 62 (Yonkers Defendants Certificate of Service); ECF No. 63 (Yonkers Defendants Local Civil Rule 56.2 Notice); ECF No. 64 (Home Depot Defendants Local Civil Rule 56.2 Notice and Certificate of Service).

7

December 22, 2022, the Yonkers Defendants and the Home Depot Defendants each filed their

replies.  ECF Nos. 67, 68.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  In other words, a court should grant summary judgment "if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).[7]  The

moving party has the burden of demonstrating that there is no genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "Where the moving party demonstrates the

absence of a genuine issue of material fact, the opposing party must come forward with specific

evidence demonstrating the existence of a genuine dispute of material fact."  *Brown v. Eli Lilly &*

*Co.*, 654 F.3d 347, 358 (2d Cir. 2011).

In deciding a summary judgment motion, any ambiguities and inferences drawn from the

facts must be viewed in the light most favorable to the nonmoving party.  *LaFond v. Gen.*

*Physics Servs. Corp.*, 50 F.3d 165, 171 (2d Cir. 1995).  Additionally, "it is well established that a

court is ordinarily obligated to afford a special solicitude to *pro se* litigants, particularly where

motions for summary judgment are concerned."  *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir.

2016).  This means that the Court must "liberally construe pleadings and briefs submitted by *pro*

*se* litigants, reading such submissions to raise the strongest arguments they suggest."  *Id.* at

---

[7]     Unless noted, case law quotations in this Order accept all alterations and omit all internal
quotation marks, citations, and footnotes.

56.  However, although "courts must refrain from assessing competing evidence in the summary judgment record and avoid making credibility judgments," even a *pro se* plaintiff must defeat summary judgment by putting forth "evidence on which the jury could *reasonably* find for the non-moving party."  *Saeli v. Chautauqua Cty.*, 36 F.4th 445, 456 (2d Cir. 2022) (emphasis in original) (affirming summary judgment dismissing complaint brought by *pro se* plaintiff).

## DISCUSSION

As discussed previously, Plaintiff asserts several causes of action including claims for "false arrest, false imprisonment, negligent detention, excessive detention, negligent infliction of emotional distress, intentional infliction of emotional distress, battery, menacing, harassment, excessive force, police brutality, negligent hiring/training/retention, negligence, gross negligence, reckless disregard, abuse of process, municipal liability, malicious prosecution" against Defendants in alleged violation of 42 U.S.C. §§ 1981, 1983, 1985, 28 U.S.C. § 1343, and New York common law.  ECF No. 1-1 at 7.  The Court addresses each claim in turn.

### I.  Plaintiff's Section 1983 Claims Fail

Section 1983 provides, in relevant part, that:  "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."  42 U.S.C. § 1983.  Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes."  *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see also Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010).  To state a claim under Section 1983, a plaintiff must allege two essential elements:  "(1) that the defendants deprived him of a right secured by the

Constitution or laws of the United States; and (2) that they did so under color of state law."

*Giordano v. City of New York*, 274 F.3d 740, 750 (2d Cir. 2001).

    *A.  Plaintiff's Section 1983 Claims against the Home Depot Defendants Fail*

    The Constitution regulates only the conduct of government actors and not that of private parties.  *See Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002)*.*  Private conduct, no matter how discriminatory or wrongful, is generally beyond the reach of Section 1983.  *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999); *see also Baez v. JetBlue Airways*, 745 F. Supp. 2d 214, 221 (E.D.N.Y. 2010) ("There must be such a close nexus between the State and the challenged private action that seemingly private behavior may be fairly treated as that of the State itself.").

    For Plaintiff to succeed on his Section 1983 complaint against a non-state actor, he must first establish that the conduct of that defendant is "fairly attributable to the State."  *Sullivan*, 526 U.S. at 50.  In other words, for Plaintiff to show that his constitutional rights have been violated, he must first establish that the challenged conduct constitutes "state action*.*"  *See Ciambriello*, 292 F.3d at 323.  Plaintiff's Section 1983 claims against the Home Depot Defendants fail because Plaintiff has not plausibly pled that they were acting under the color of state law.  *Azkour v. Bowery Residents Comm., Inc.*, 646 F. App'x 40, 41 (2d Cir. 2016) (affirming dismissal of Section 1983 claim because defendant was a private entity, not a state actor).  Plaintiff seemingly argues that the Home Depot Defendants acted under the color of state law because they wrongfully identified him as the individual who committed the fraudulent transaction.  *See* ECF No. 66 at 3 ("I was wrongfully accused of a crime that I didn't commit . . . .  I had no knowledge of the crime that was committed until my arrest.").  Even if Plaintiff was correct that the Home Depot Defendants wrongfully identified him as the individual who

committed the fraudulent transaction, "providing false information to the police does not make a private individual a state actor and liable under § 1983." *Baez*, 745 F. Supp. 2d at 221.

### B.   *Plaintiff's Section 1983 Claims Against the Yonkers Defendants Fail*

Plaintiff brings Section 1983 claims against the City of Yonkers, the YPD and Detective Cave.  However, the City of Yonkers and the YPD "are not liable under section 1983 for any deprivations of [Plaintiff's] constitutional rights unless such deprivations resulted from acts pursuant to an official municipal policy or custom." *See Carlisle v. City of Yonkers*, No. 94-cv-2945, 1996 WL 164697, at *1 (S.D.N.Y. Apr. 9, 1996), *rev'd on other grounds*, 104 F.3d 352 (2d Cir. 1996) (affirming in part and remanding in part and finding that the district court should not have dismissed plaintiff's claims with prejudice in light of plaintiff's request to amend his complaint at an earlier stage in the action).  Accordingly, the Court considers whether Plaintiff sufficiently asserts a claim for municipal liability against the City of Yonkers and the YPD, and considers whether Plaintiff sufficiently asserts causes of action against Detective Cave for the remainder of his Section 1983 claims.

### i.   Municipal Liability

A plaintiff asserting a claim pursuant to Section 1983 against a municipality, such as the City of Yonkers, or a municipal agency, such as the YPD, must allege "challenged conduct" that was done "pursuant to official municipal policy or a decision by a municipal policymaker that violates federal law," as required by the U.S. Supreme Court's decision in *Monell v. Department of Social Services*, 436 U.S. 658 (1978), and its progeny.  *Rodrigues v. City of New York*, 835 F. App'x 615, 618 (2d Cir. 2020) (affirming dismissal of municipal liability claim brought by *pro se* plaintiff).  Even if a plaintiff alleges that a municipal custom or policy caused purported constitutional violations, "[t]he mere assertion that a municipality has such a custom or policy is

insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." *Cotto v. City of New York*, 803 F. App'x 500, 503 (2d Cir. 2020) (affirming dismissal of municipal liability claim brought by *pro se* plaintiff).  The Court grants summary judgment in favor of the City of Yonkers and YPD because Plaintiff does not even allege that a City of Yonkers or YPD policy existed or played a role in the denial of the constitutional rights that he invokes.  *See generally* ECF No. 1-1.

ii.    False Arrest and False Imprisonment

Federal courts look to state law when considering federal civil rights claims for false arrest and false imprisonment.  *See Guan v. City of New York*, 37 F.4th 797, 804 (2d Cir. 2022). Under New York law, there is no distinction between false arrest and false imprisonment.  *See Rhodes v. United States*, 519 F. App'x 703, 705 (2d Cir. 2013); *Liranzo v. United States*, 690 F.3d 78, 91 n.13 (2d Cir. 2012).  To state a claim for false arrest under New York law, "a plaintiff must show that:  (1) the defendant intentionally confined the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise justified."  *Douglas v. City of New York*, 595 F. Supp. 2d 333, 340 (S.D.N.Y. 2009).

The existence of probable cause is "a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983."  *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996).  "[P]robable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime."  *Id.*

Here, Plaintiff was arrested on July 18, 2017, when he was pulled over by the NYPD for a traffic violation and the arresting officer became aware of an outstanding arrest warrant.  ECF No. 56 ¶ 45.  The parties do not dispute that the "NYPD checked Plaintiff's identification and discovered that he was wanted by [the] YPD under [a felony arrest warrant] for identity theft in the first degree."  *Id.* ¶ 47.  The felony arrest warrant was obtained after an investigation conducted by Detective Cave, with authorization of the Westchester County District Attorney's Office, and was ultimately issued by a judge of the City of Yonkers Court.  *Id.* ¶¶ 42–44.

In light of the circumstances and the facts available to Detective Cave, the Court finds that there was probable cause to arrest Plaintiff.  *See Aponte v. Kanbur*, No. 20-cv-624, 2021 WL 3854069, at *4 (2d Cir. Aug. 30, 2021) (finding that "in the context of a false arrest claim, the existence of a valid arrest warrant" supports probable cause "because arrests pursuant to a warrant . . . are generally presumed to be reasonable given that warrants cannot be issued absent probable cause"); *Phillips v. DeAngelis*, 571 F. Supp. 2d 347, 353 (N.D.N.Y. 2008) ("Since [plaintiff] was arrested pursuant to an arrest warrant, his false arrest claim cannot lie.  While plaintiff[] contend[s] that the arrest warrant was issued without probable cause, it was facially valid, which means that a malicious prosecution claim, not a false arrest claim, is the proper vehicle for relief.").  Because probable cause is a complete defense to an action for false arrest, Plaintiff's claim fails, and Detective Cave is entitled to summary judgment.  *See Weyant*, 101 F.3d at 852; *see also Jenkins v. City of New York*, 478 F.3d 76, 88 (2d Cir. 2007) ("[I]f, when the facts are construed in favor of the plaintiff, the officer's probable cause determination was objectively reasonable, the court under New York law should dismiss the plaintiff's false arrest claim at the summary judgment stage.").

13

iii.   <u>Malicious Prosecution</u>

 "To prevail on a malicious prosecution claim under federal law, a plaintiff must show:
(1) the commencement or continuation of a criminal proceeding by the defendant against the
plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of
probable cause for the criminal proceeding, and (4) actual malice.  *Thompson v. Clark*, No. 14-
cv-7349, 2023 WL 3570658, at \*4 (E.D.N.Y. May 18, 2023).  Under federal law, Plaintiff  "must
[also] demonstrate a sufficient post-arraignment liberty restraint."  *Id.*

> Probable cause, in the context of malicious prosecution, has been described as such
> facts and circumstances as would lead a reasonably prudent person to believe the
> plaintiff guilty.  This is a slightly higher standard than the probable cause required
> to defeat a false arrest claim under Section 1983, which only requires the arresting
> officer to have knowledge or reasonably trustworthy information of facts and
> circumstances that are sufficient to warrant a person of reasonable caution in the
> belief that the person to be arrested has committed or is committing a crime.  For a
> defendant successfully to invoke probable cause to defeat a claim for malicious
> prosecution,  probable cause must be shown as to each crime charged in the
> underlying criminal action.

*Id.* at \*4–5.  However, probable cause is "an absolute defense" to a malicious prosecution claim.
*Maron v. Cnty. of Albany*, 166 F. App'x 540, 541 (2d Cir. 2006).

Plaintiff was arrested for allegedly committing identity theft in the first degree, in
violation of Penal Law § 190.80(2).  He was ultimately prosecuted for identity theft in the third
degree, in violation of Penal Law § 190.78(1), and attempted grand larceny in the fourth degree,
in violation of Penal Law § 155.30(1).  ECF No. 56 ¶¶ 44, 47, 49.  Section 190.78(1) states in
relevant part,

> A person is guilty of identity theft in the third degree when he or she knowingly
> and with intent to defraud assumes the identity of another person by presenting
> himself or herself as that other person, or by acting as that other person or by using
> personal identifying information of that other person, and thereby . . . obtains goods,

14

money, property or services or uses credit in the name of such other person or causes financial loss to such person or to another person or persons;

Section 155.30(1) states in relevant part, "[a] person is guilty of grand larceny in the fourth degree when he steals property and when . . . the value of the property exceeds one thousand dollars."

Detective Cave's investigation revealed that: (i) eyewitnesses identified Plaintiff as the customer who initiated a fraudulent transaction on the day of the incident; (ii) an officer observed Plaintiff throw credit application paperwork on the ground with the victim's name on it; (iii) the victim provided a statement and evidence that he did not open and/or authorize anyone to open or use a Home Depot credit account in his name; (iv) that a purchase of $8,932.54 was made using the victim's identity; and (v) an eyewitness identified Plaintiff in a photographic array as the customer who initiated the fraudulent transaction.  ECF No. 56 ¶¶ 10–11, 13, 25–28, 30–33, 36–38; ECF No. 58-2 ¶¶ 7–8, 11, 15.  The Court finds that these "facts and circumstances . . . would lead a reasonably prudent person to believe the plaintiff guilty."  *Kee*, 12 F.4th 150 at 166; *see also Johnson v. Constantellis*, 221 F. App'x 48, 50 (2d Cir. 2007) ("If probable cause existed at the time of arrest, it continues to exist at the time of prosecution unless determined by the discovery of some intervening fact.").  Accordingly, the Court concludes that there was probable cause to prosecute Plaintiff for identity theft in the third degree and attempted grand larceny in the fourth degree.

Moreover, Plaintiff cannot satisfy the malice prong of his malicious prosecution claim. "The Second Circuit denies malicious prosecution claims against police officers unless the plaintiff can establish that the indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith."  *Wilson v. McMullen*, No. 07-cv-948,

15

2010 WL 1268055, at *6 (E.D.N.Y. Mar. 30, 2010).  Plaintiff provides no evidence that

Detective Cave's involvement in the subsequent prosecution was motivated by malice.

    iv.   <u>Excessive Force and Police Brutality</u>[8]

"The Fourth Amendment protects individuals from the government's use of excessive

force when detaining or arresting individuals.  A police officer's use of force is excessive in

violation of the Fourth Amendment if it is objectively unreasonable in light of the facts and

circumstances confronting him, without regard to his underlying intent or motivation." *Lawson

v. Cnty. of Suffolk*, 920 F. Supp. 2d. 332, 339 (E.D.N.Y. 2013).  "Summary judgment is

appropriate where . . . the record is devoid of evidence of any kind supporting [Plaintiff's]

description of his injuries—other than his own claims."  *Smith v. City of New York*, No. 18-cv-

5079, 2021 WL 4267525, at *7 (S.D.N.Y. Sept. 20, 2021).  Nothing in Plaintiff's complaint

suggests that Detective Cave or any other member of the YPD used excessive force to place

Plaintiff in custody on December 23, 2015, or during Plaintiff's arrest on July 18, 2017, other

than Plaintiff's "own bare assertions" that he suffered "pain" and "physical injury."  *Id.* at *7;

ECF No. 1-1 at 11.  Accordingly, on the record before it, the Court finds that there are no

genuine issues of material fact, and that Detective Cave is therefore entitled to summary

judgment on Plaintiff's excessive force claim.

---

[8]    While Plaintiff raises police brutality as a separate claim, the Court finds that Plaintiff's excessive force and police brutality claims are essentially the same.  "Therefore, it is reasonable to treat . . . [P]laintiff's police brutality claim as subsumed within his excessive-force claim." *Smith v. New York City Police Dept.*, No. 06-cv-15436, 2010 WL 423039, at *3 n.2 (S.D.N.Y. Feb. 4, 2010).

v.   Negligent and Excessive Detention

Plaintiff generally asserts an excessive detention claim against Detective Cave.  ECF No.

1-1 at 7.  To prevail on an excessive detention claim, "a plaintiff must demonstrate (1) that he

has a right to be free from continued detention stemming from law enforcement officials'

mishandling or suppression of exculpatory evidence, (2) that the actions of the officers violated

that right, and (3) that the officers' conduct shocks the conscience."  *Nzegwu v. Friedman*, 605 F.

App'x 27, 32 (2d Cir. 2015).  Here, Plaintiff alleges that following his arrest on July 18, 2017, he

"was held against [his] will, mistreated and put into solitary confinement for a few days."  ECF

No. 61 at 1 (Opposition to Yonkers' Defendants Motion for Summary Judgment).  As an initial

matter, Detective Cave cannot be held liable for excessive detention because Plaintiff was

arrested pursuant to a warrant.  *See Caravalho v. City of New York*, 732 F. App'x 18, 23 (2d Cir.

2018) ("A claim for excessive detention is governed by the Fourth Amendment, which requires a

prompt judicial determination of probable cause as a prerequisite to an extended pretrial

detention following a warrantless arrest.").

Moreover, without proof of suppression or mishandling of evidence, the Court "need not

even reach the question of whether [Detective Cave's] behavior shocks the conscience or

whether the evidence was exculpatory or not."  *Nzegwu*, 605 F. App'x at 32.  Given that there is

no allegation that "evidence was tampered with, lost, tainted, or concealed, and no allegation

supported by record evidence that any evidence was withheld" by Detective Cave, summary

judgment is granted as to Plaintiff's excessive detention claim.  *Id.*

vi.   Abuse of Process

"[U]nder § 1983, an abuse of process claim in New York lies against a defendant who (1)

employs regularly issued legal process to compel performance or forbearance of some act (2)

17

with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Coleman v. City of New York*, 585 F. App'x 787, 788 (2d Cir. 2014). "[I]t is not sufficient for a plaintiff to allege that the defendants were seeking to retaliate against him by pursuing his arrest and prosecution. Instead, he must claim that they aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." *Savino v. City of New York*, 331 F.3d 63, 77 (2d Cir. 2003). Here, Plaintiff merely alleges in conclusory fashion that he was "wrongfully accused of a crime that [he] did not commit." ECF No. 61 at 1 (Plaintiff's Opposition to Yonkers' Defendants Motion for Summary Judgment). "[W]ithout an allegation that the process has been improperly perverted *after* its issuance," "i.e., that the perverted operation of the process itself tended to effect the defendants' malicious objectives," Plaintiff's abuse of process claim must be dismissed. *See Jones v. Maples/Trump*, No. 98-cv-7132, 2002 WL 287752, at *7–8 (S.D.N.Y. Feb. 26, 2002) (emphasis added), *aff'd*, 71 F. App'x 873 (2d Cir. 2003). There is no evidence that Detective Cave used the prosecution of Plaintiff for any collateral purpose. Given the Court's finding that there was probable cause to arrest and prosecute Plaintiff, *see supra* sections I.B.ii and I.B.iii, the Court grants summary judgment in favor of Detective Cave on Plaintiff's abuse of process claim.

vii.   Invasion of Privacy

Plaintiff further alleges that Detective Cave's actions "constituted an invasion of privacy" without specifying whether he is referring to the common law tort or a federal constitutional right to privacy. ECF No. 1-1 at 14. "A common law tort does not give rise to a § 1983 action unless the commission of the tort also violates a right guaranteed plaintiff under the Constitution or federal statute." *Rodriguez v. Phillips*, 66 F.3d 470, 476 (2d Cir. 1995). To the extent that Plaintiff is alleging a violation of his constitutional right to privacy under the Constitution or

18

another federal statute, the Court finds that Plaintiff has offered no factual or legal support to

sustain such a claim in his complaint or oppositions to the Yonkers Defendants' and the Home

Depot Defendants' motions for summary judgment.  Accordingly, the Court grants summary

judgment in favor of Detective Cave because there is no genuine issue of material fact given that

Plaintiff fails to state a claim.

     viii.    <u>Libel and Slander, Negligence, Negligent and Intentional Infliction of Emotional
Distress, Negligent Hiring and Retention, Menacing and Harassment, and Reckless
Disregard</u>

Plaintiff generally asserts in wholly conclusory fashion additional claims for libel and

slander, negligent infliction of emotional distress, intentional infliction of emotional distress,

battery, menacing and harassment, negligent hiring/training/retention, negligence, and reckless

disregard against Detective Cave in alleged violation of Section 1983.  ECF No. 1-1 at 7, 16.

However, none of these claims are federally recognizable under Section 1983 and are therefore

dismissed.  *See, e.g., Smith v. Town of Lewiston*, No. 18-cv-1069, 2020 WL 5237924, at *11

(W.D.N.Y. July 30, 2020) ("It is settled, however, that a § 1983 claim does not lie based solely

upon allegations of slander or libel."), *report and recommendation adopted*, 2020 WL 5230906

(W.D.N.Y. Sept. 2, 2020); *Felix-Torres v. Graham*, 687 F. Supp. 2d 38, 65 (N.D.N.Y. 2009)

(holding that ordinary negligence by itself cannot establish a cause of action under Section

1983); *Anderson v. City of New York*, No. 13-cv-1745, 2013 WL 6182675, at *3 (S.D.N.Y. Nov.

19, 2013) ("[W]hile there are no Second Circuit decisions on point, federal courts in other

districts have dismissed § 1983 claims for intentional infliction of emotional distress because it is

not a cognizable constitutional claim."); *Greene v. Trustees of Columbia Univ.*, 234 F. Supp. 2d

368, 381 (S.D.N.Y. 2002) ("Menacing and harassment is recognized in the criminal law, but is

not a cognizable tort.").  In any event, Plaintiff does not allege any facts or introduce any

evidence to support these claims.  Accordingly, the Court grants summary judgment in favor of Detective Cave.

## II.    Plaintiff's Section 1985 Claims Fail

Plaintiff generally asserts a Section 1985 claim against Defendants.  *See* ECF No. 1-1 at 15 ("[P]laintiff . . . was deprived of his civil rights under the . . . Constitution of the United States . . . including 42 U.S.C.A. § . . . 1985").  "To state a cause of action under § 1985, a plaintiff must allege (1) a conspiracy; (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States."  *Chillemi v. Town of Southampton*, 943 F. Supp. 2d 365, 380–81 (E.D.N.Y. 2013).  "To assert a conspiracy under Section 1985, a plaintiff must [also] provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end."  *Masters v. Mack*, No. 22-cv-6582, 2022 WL 17961211, at *6 (E.D.N.Y. Dec. 27, 2022); *see also Thomas v. Roach*, 165 F.3d 137, 147 (2d Cir. 1999) ("[A] plaintiff alleging a conspiracy under § 1985(3) must allege, with at least some degree of particularity, overt acts which defendants engaged in which were reasonably related to the promotion of the claimed conspiracy.").

Plaintiff has failed to plead sufficient facts to support his allegations that the Yonkers Defendants or the Home Depot Defendants acted in concert to deprive him of the equal protection of the law.  Plaintiff argues that "he was racially profiled because of [his] skin color."  ECF No. 66 at 3.  Plaintiff further contends that "[t]he description that was given was not me.  They was [sic] looking for someone in their early 20s."  *Id.*  However, the evidence presented by

Defendants contradicts Plaintiff's assertions.  The Home Depot security guard told the YPD dispatcher that the customer who completed the fraudulent transaction "was a black male with hair braids, who was wearing a green sweatshirt, jeans and a black hat."  ECF No. 56 ¶ 4.  When the YPD officers arrived at the Home Depot they observed the Plaintiff—a black male wearing a green sweatshirt—by the door of the store and asked the security guard to confirm whether Plaintiff was the individual who completed the fraudulent transaction.  *Id.* ¶ 9; ECF No. 58-2 ¶ 6.  Plaintiff's conclusory allegation that he was racially profiled is contradicted by the uncontroverted evidence that he was identified by multiple eyewitnesses as the customer who attempted to engage in the fraudulent transaction.   Plaintiff has failed to meet his burden to "come forth with significant probative evidence to demonstrate that a factual dispute does in fact exist."  *Phelps v. Szubinski*, 577 F. Supp. 2d 650, 662 (E.D.N.Y. 2008); *see also Roach,* 165 F.3d at 147 (finding defendants were entitled to summary judgment where "[plaintiff] alleged no facts and presented no evidence that could have shown that [defendants] acted with class-based discriminatory animus").

Accordingly, the Court finds that Defendants are entitled to summary judgment on Plaintiff's section 1985 claim.  *Roach,* 165 F.3d at 147 ("Absent specific factual allegations as to the participation of a particular defendant in the conspiracy, plaintiff's § 1985(3) claim cannot survive a motion for summary judgment by that defendant.").

## III.   Plaintiff's Section 1981 Claim Fails

Plaintiff also generally asserts a Section 1981 claim against Defendants.  *See* ECF No. 1-1 at 15 ("[P]laintiff . . . was deprived of his civil rights under the . . . Constitution of the United States . . . including 42 U.S.C.A. § . . . 1981").  Section 1981 provides that, "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to

make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of

all laws and proceedings for the security of persons and property as is enjoyed by white

citizens." 42 U.S.C. § 1981(a). Section 1981 bars all racial discrimination in contracts,

including retaliation. *Claud v. Brown Harris Stevens of Hamptons, LLC*, No. 18-cv-1390, 2023

WL 3858677, at *20 (E.D.N.Y. June 7, 2023).

> To establish a claim under § 1981, a plaintiff must allege facts in support of the
> following elements: (1) the plaintiff is a member of a racial minority; (2) an intent
> to discriminate on the basis of race by the defendant; and (3) the discrimination
> concerned one or more of the statutorily enumerated activities. With respect to the
> second element, a plaintiff must offer more than conclusory allegations that he was
> discriminated against because of his race. A plaintiff must plead sufficient facts to
> state a plausible claim for relief under 42 U.S.C. § 1981, and cannot rely on wholly
> conclusory allegations of discriminatory intent.

*Gray v. City of New York*, No. 10-cv-3039, 2014 WL 12862303, at *14 (E.D.N.Y. Feb. 25,

2014). Plaintiff's Section 1981 claim fails for several reasons. First, Section 1981 is

inapplicable here because Plaintiff's claim is not based on the making or enforcement of a

contract nor does his claim concern retaliation. Second, as set forth previously, *see supra* section

III, Plaintiff fails to plead sufficient facts to support his claim beyond conclusory allegations that

he was discriminated against because of his race. ECF No. 66 at 3. Accordingly, the Court finds

that Defendants are entitled to summary judgment on Plaintiff's Section 1981 claim because

Plaintiff has failed to allege his Section 1981 claim in a non-conclusory manner. *See Clyburn v.

Shields*, 33 F. App'x 552, 555 (2d Cir. 2002) ("[C]laims of race-based discrimination under . . .

42 U.S.C. § 1981 . . . require that intentional discrimination be alleged in a non-conclusory

fashion.").

**IV.   The Court Declines to Exercise Supplemental Jurisdiction Over Plaintiff's New York Common Law Claims**

To the extent that Plaintiff raises state law claims,[9] the Court declines to exercise supplemental jurisdiction over those claims.  "District courts may use their discretion in deciding whether to exercise supplemental jurisdiction over state law claims after dismissing a plaintiff's only federal claims, so long as the federal claims were not dismissed for lack of subject matter jurisdiction."  *Probiv v. PayCargo LLC*, No. 22-cv-2907, 2023 WL 159788, at *5 (E.D.N.Y. Jan. 11, 2023); 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."); *see also Cangemi v. United States*, 13 F.4th 115, 134 (2d Cir. 2021).

## CONCLUSION

For the reasons set forth above, the Court GRANTS Defendants' motions for summary judgment in their entirety.  The Clerk of Court is respectfully directed to enter judgment in favor of Defendants, and to close this case.  The Clerk of Court is further directed to mail a copy of this Order to the *pro se* Plaintiff and to note the mailing on the docket.

SO ORDERED.

   */s/ Hector Gonzalez*        
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
       August 28, 2023

---

[9]   Plaintiff purports to assert the following common law claims:  "false arrest, false imprisonment, negligent detention, excessive detention, negligent infliction of emotional distress, intentional infliction of emotional distress, battery, menacing, harassment, excessive force, police brutality, negligent hiring/training/retention, negligence, gross negligence, reckless disregard, abuse of process, municipal liability, malicious prosecution."  ECF No. 1-1 at 6–7.